UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GERARDO MENDEZ PEREZ and ALFREDO HERNANDEZ PEREZ, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CASE NO. _____ |
| CJR FRAMING, INC.; JAVIER HERNANDEZ; FERNANDO HERNANDEZ; and CARMELO HERNANDEZ, | § § § § § | |
| Defendants. | § § | |

## ORIGINAL COMPLAINT

1. Plaintiffs Gerardo Mendez Perez ("Plaintiff Mendez") and Alfredo Hernandez Perez ("Plaintiff Hernandez") were recruited and employed by Defendants Javier Hernandez, Fernando Hernandez, Carmelo Hernandez, and CJR Framing, Inc., through the H-2B temporary foreign worker visa program to labor for Defendants' construction business. Plaintiffs bring this action for unpaid wages, breach of contract, fraud, and unlawful conduct with respect to immigration documents.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 (federal question), 29 U.S.C. § 216(b) (Fair Labor Standards Act), and 18 U.S.C. § 1595(a) (Trafficking Victims Protection Reauthorization Act).

3. This Court also has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367, because the state law claims are so closely related to the federal claims that they form part of the same case or controversy.

4. Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Each Defendant has sufficient contacts with this forum to give this Court personal jurisdiction over each Defendant.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1).

## PARTIES

7. Plaintiff Gerardo Mendez Perez is an individual who worked for the Defendants' construction business as an H-2B worker in or near Bryan, Texas. Plaintiff Gerardo Mendez Perez has consented to the filing of this action for violations of the Fair Labor Standards Act (see Exhibit A).

8. Plaintiff Alfredo Hernandez Perez is an individual who worked for the Defendants' construction business as an H-2B worker in or near Bryan, Texas. Plaintiff Alfredo Hernandez Perez has consented to the filing of this action for violations of the Fair Labor Standards Act (see Exhibit A).

9. Defendant CJR Framing, Inc., is a domestic for-profit corporation formed and existing under the laws of the State of Texas and whose principal place of business is 10334 Casnett Dr., Dallas, Texas 75217. Defendant CJR Framing, Inc., may be served with process by serving its registered agent, Raul Hernandez, at 7900 Lake June Rd, Dallas, Texas 75217.

10. Defendant Javier Hernandez is an individual residing in or around Dallas County who may be served at his residence at 10334 Casnett Dr., Dallas, Texas 75217.

11. Defendant Fernando Hernandez is an individual residing in or around Dallas County who may be served at his residence at 414 Old Mill Ln., Dallas, Texas 75217.

12. Defendant Carmelo Hernandez is an individual residing in or around Dallas County who may be served at his principal place of business at 10334 Casnett Dr., Dallas, Texas 75217.

**FACTS**

**A. Defendants' Participation in the H-2B Program**

13. Defendants operate a construction business known as CJR Framing, Inc. ("CJR Framing"), that has its main office located at 7900 Lake June Rd, Dallas, Texas 75217, and that provides residential and commercial construction services.

14. At all relevant times, CJR Framing was an enterprise engaged in commerce or in the production of goods for commerce as that term is defined by 29 U.S.C. § 203(a).

15. CJR Framing employs construction laborers to perform labor on its residential and commercial construction projects.

16. Defendant Javier Hernandez is a corporate officer of CJR Framing. He serves as President of CJR Framing.

17. Defendants Fernando Hernandez and Carmelo Hernandez have worked as supervisors and managers for CJR Framing.

18. Each individual Defendant—Javier Hernandez, Fernando Hernandez, and Carmelo Hernandez—had operational control over CJR Framing, Inc.; exercised control over the terms and conditions of employees' work; maintained CJR Framing, Inc.'s, employee records; and had the power to act on behalf of CJR Framing, Inc., vis-a-vis its employees, including Plaintiffs.

19. Each individual Defendant had the power and authority to made decisions on behalf of CJR Framing, including decisions related to the recruitment and hiring of foreign workers, and was authorized to make representations to the U.S. government related to such recruitment and hiring.

20. Each Defendant had the power and exercised the power to establish wages and working conditions of CJR Framing's employees, including the decisions to hire, fire, and discipline employees.

21. Each Defendant conspired and combined to recruit and import foreign workers through illegal means that deprived Plaintiffs of their rights under federal and state law governing the importation of foreign visa workers.

22. To carry out their scheme to fraudulently recruit and employ temporary foreign workers, Defendants made false representations to the U.S. government about the jobs they planned to fill with foreign workers and engaged agents to make false representations to foreign workers, including Plaintiffs, to induce them to travel to the U.S. to work for CJR Framing.

23. Defendants petitioned the Department of Homeland Security ("DHS") for permission to import temporary foreign workers to perform construction services using the H-2B visa program.

24. By regulation, DHS requires a petition for H-2B visas to be accompanied by a temporary labor certification from the Department of Labor ("DOL"). To obtain such a certification, an employer must request a determination from DOL of the prevailing wage applicable to the employer's job openings in the area of intended employment. The employer must then engage in specific efforts to recruit U.S. workers at no less than the prevailing wage. If the recruitment efforts do not produce sufficient U.S. workers to fill all of the employer's job openings, the employer may submit a temporary labor certification application to DOL on Form 9142. The application requires employers to set forth the terms and conditions of work that the employer is offering to the foreign workers it seeks to hire. The terms must be no less favorable than the terms offered to U.S. workers and must include a promise to pay no less than the prevailing wage for all hours of work.

25. If DOL determines that U.S. workers are not available to fill the employer's job openings, and that the terms and conditions of work offered to foreign workers will not adversely affect the wages and working conditions of similarly employed U.S. workers, DOL approves the labor certification application. The employer may then petition DHS for H-2B visas.

26. In 2016, Defendant CJR Framing obtained a prevailing wage determination from DOL for the jobs of construction laborers to work for CJR Framing on several project in the Dallas, Texas, area and filed labor certification applications on Form 9142.

27. In 2016, DOL approved Defendant CJR Framing's labor certification application and DHS granted its petition for 65 H-2B construction laborers.

**B. Defendants' Recruitment and Hiring of Plaintiffs as H-2B Workers**

28. In 2016, Defendants recruited workers in Mexico and Guatemala to work for Defendant CJR Framing through the H-2B program and selected individuals that they wanted to hire.

29. Plaintiffs were among the group of workers selected to be hired to work for Defendant CJR Framing.

30. Defendants, through their agents, instructed Plaintiffs to meet with Defendant CJR Framing's representatives before going through the visa interview process.

31. In June 2016, Defendants instructed Plaintiff Mendez to go to Guatemala City to meet with Defendant CJR Framing's representative.

32. In or around June 2016, Defendants instructed Plaintiff Hernandez to go to Nuevo Laredo to meet with Defendant CJR Framing's representative.

33. At the meetings in Guatemala City and Nuevo Laredo, Plaintiffs met with a representative who identified herself as a lawyer acting on behalf of Defendant CJR Framing.

34. Plaintiff Mendez was recruited in Guatemala by Defendant CJR Framing.

35. In approximately June 2016, Plaintiff Mendez met with an agent of Defendant CJR Framing in Guatemala City. The agent represented herself as Defendant CJR Framing's attorney and required Plaintiff Mendez a pay a fee to proceed with the interview. Defendant CJR Framing's

agent told Plaintiff Mendez the wage rate that Defendant CJR Framing would pay him during the term of his visa and showed him a document with the same information.

36. Defendant CJR Framing's agent further instructed Plaintiff Mendez that he had to pay the costs of the airplane ticket to Dallas, Texas. Plaintiff Mendez had to borrow money from relatives to cover the travel costs.

37. Plaintiff Hernandez was recruited in Mexico by Defendant CJR Framing.

38. In approximately June 2016, Plaintiff Hernandez met with an agent of Defendant CJR Framing agent in Nuevo Laredo, Mexico. The agent represented herself as Defendant CJR Framing's attorney and required Plaintiff Hernandez to pay a fee to proceed with the interview. Defendant CJR Framing's agent told Plaintiff Hernandez the wage rate that Defendant CJR Framing would pay him during the term of his visa and provided him a document with the same information.

39. Defendant CJR Framing's agent further instructed Plaintiff Hernandez that he had to pay the costs of his transportation to Dallas, Texas. He had to borrow money from relatives to cover the costs.

40. In the meetings, Defendant CJR Framing, through its agent, offered work contracts to Plaintiffs.

41. The employment contracts offered to Plaintiffs informed them that they would work as full-time construction laborers for Defendant CJR Framing in Dallas, Texas, from the date of their arrival to the United States to December 31, 2016; that they would be compensated at a rate of $12.92 per hour; that they would work 40 hours per week; and that Defendant CJR Framing would provide them with free housing.

42. The employment contracts offered by Defendants contained material false representations concerning the terms and conditions of Plaintiffs' employment. The Defendants made these representations with no intention of fulfilling their promises, made them with knowledge of their falsity or with reckless disregard for the truth of the representations, and did so with the intention that Plaintiffs would rely upon the representations. The false representations made by Defendants included promises that:

   a. Plaintiffs would be paid $12.92 per hour and no less than the prevailing wage as set by the DOL for the position and location where they would be employed;

   b. Plaintiffs' work schedule would be for 40 hours per week;

   c. Plaintiffs would be employed pursuant to these terms from the time of entry in the United States through December 31, 2016; and

   d. Plaintiff Mendez was also told that he would be paid time and one half his regular rate of pay for all hours he worked beyond 40 in a workweek.

43. The DOL-approved temporary labor certification application for Plaintiffs' H-2B visas, the accompanying attestations, and the applicable regulatory requirements were incorporated by law into Plaintiffs' employment contracts with Defendant CJR Framing, with enforceable terms and conditions of employment.

44. Defendants concealed material facts, which were known to Defendants, with the specific intent that Plaintiffs would be misled by these omissions. Defendants concealed the material facts with actual knowledge that Plaintiffs did not know the truth or have equal opportunity to discover the truth, with the intent to induce Plaintiffs to work for Defendants. The information that Defendants concealed from Plaintiffs included:

   a. Defendants would not pay Plaintiffs in accordance with all applicable laws;

    b. Defendants intended to pay an hourly rate less than the promised rate;

    c. Defendants intended to require Plaintiffs to work more than forty hours per week and to not pay the overtime wages required by law;

    d. Defendants intended to pay Plaintiffs in cash and not provide pay statements;

    e. Defendants intended to require Plaintiffs to kick back $2,000 from their wages to Defendants to pay for their visas;

    f. Defendants intended to require Plaintiffs to live in substandard housing;

    g. Defendants intended to require Plaintiffs to work at locations outside of the Dallas, Texas, area;

    h. Defendants intended to require Plaintiffs to purchase their own tools and personal protective equipment;

    i. Defendants intended to require Plaintiffs to perform work other than construction labor if they had the requisite skills and experience; and

    j. Defendants intended to take possession of Plaintiffs' immigration documents.

45. Plaintiff Mendez entered into the above-described employment contract in approximately June 2016.

46. Plaintiff Hernandez entered into the above-described employment contract in approximately July 2016.

47. Plaintiffs relied to their detriment upon the promises made by Defendants, including the false statements and omissions described above, and traveled to the United States to work for Defendants.

48. Each Defendant aided, abetted, and conspired in the above-stated actions by, inter alia, agreeing to misrepresent what workers would be paid and where they would work, as well as by

participating in and benefitting from the scheme with actual knowledge that Defendant CJR Framing was obtaining Plaintiffs' labor through fraudulent and illegal representations described above with reckless disregard for its unlawful actions.

49. All Defendants concealed or failed to disclose material facts concerning Plaintiffs' employment that were within the knowledge of Defendants and that Defendants knew or should have known were not within the knowledge of the Plaintiffs, including, inter alia, that Plaintiffs were entitled to overtime wages and were not receiving the prevailing wage rate for the jobs and locations where they worked, and that Plaintiffs were required to illegally kick back thousands of dollars from their wages to pay for their visas.

50. Defendant CJR Framing supplied false information to, and concealed material facts from, Plaintiffs in the course of its business and in the course of transactions in which it had a pecuniary interest. Defendant CJR Framing supplied false information and concealed information, as detailed above, with the specific intent that Plaintiffs would rely on that information in Plaintiffs' business transactions with Defendants.

51. Each individual Defendant had the authority and opportunity to act on behalf of CJR Framing, Inc. to disclose concealed information but chose not to.

52. Defendants failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiffs regarding the transactions described above.

**C. Plaintiffs' Arrival and Work in the United States**

53. Plaintiffs Mendez and Hernandez traveled to the United States with separate groups of H-2B workers recruited by Defendant CJR Framing.

54. Plaintiff Mendez traveled to Dallas, Texas, with other H-2B workers who were going to work for Defendant CJR Framing in approximately June 2016.

55. Upon arrival in Dallas, Texas, Plaintiff Mendez met with representatives of Defendant CJR Framing—upon information and belief, family members of Defendants Javier Hernandez, Fernando Hernandez, and Carmelo Hernandez—who required him to turn over his passport, visa, and return travel ticket.

56. The representatives of Defendant CJR Framing informed Plaintiff Mendez and the other H-2B workers that they had to purchase their own tools for their job as construction laborers and drove them to a store to purchase the tools. The representatives of Defendant CJR Framing paid for the tools, informing Plaintiff Mendez and the other H-2B workers that the cost would be deducted from their future wage payments.

57. The representatives of Defendant CJR Framing instructed Plaintiff Mendez and the other H-2B workers he was with that they were not going to work in Dallas, but rather at a job site in Bryan, Texas.

58. The representatives of Defendant CJR Framing transported Plaintiff Mendez and the other H-2B workers from Dallas, Texas, to Bryan, Texas.

59. Upon arrival in Bryan, Texas, Plaintiff Mendez stayed in a motel room with several other workers and had to sleep on the floor. Plaintiff Mendez later had to stay in an apartment with even more workers and the same substandard living conditions.

60. In Bryan, Texas, Defendant Carmelo Hernandez told Plaintiff Mendez that Defendant CJR Framing would not pay the wage rate promised to him in Guatemala, stating that they would only pay a wage rate of ten dollars per hour for all hours worked, including hours worked over 40 in a workweek.

61. Further, Defendant Carmelo Hernandez told Plaintiff Mendez he had to pay $2,000 in kickbacks to Defendant CJR Framing for obtaining his H-2B visa so that he could work for the

company. Defendant Carmelo Hernandez instructed Plaintiff Mendez that Defendant CJR Framing would deduct $200 from each weekly wage payment.

62. Plaintiff Hernandez traveled to Dallas, Texas, with other H-2B workers who were going to work for Defendant CJR Framing in approximately July 2016.

63. Upon arrival in Dallas, Texas, Plaintiff Hernandez met with representatives of Defendant CJR Framing—upon information and belief, family members of Defendants Javier Hernandez, , Fernando Hernandez, and Carmelo Hernandez—who required Plaintiff Hernandez to turn over his passport and visa.

64. The representatives of Defendant CJR Framing informed Plaintiff Hernandez and the other H-2B workers that they had to purchase their own tools for their job as construction laborers and drove them to a store to purchase the tools. The representatives of Defendant CJR Framing paid for the tools, informing Plaintiff Hernandez and the other H-2B workers that the cost would be deducted from their future wage payments.

65. The representatives of Defendant CJR Framing instructed Plaintiff Hernandez that he and the other H-2B workers were not going to work in Dallas, but rather at a job site in Bryan, Texas.

66. The representatives of Defendant CJR Framing transported Plaintiff Hernandez and the other H-2B workers from Dallas, Texas, to Bryan, Texas.

67. In Bryan, Texas, Defendant Carmelo Hernandez told Plaintiff Hernandez that Defendant CJR Framing would not pay the wage rate promised to him in Mexico, stating that they would only pay a wage rate of ten dollars per hour for all hours worked, including hours worked over 40 in a workweek.

68. Further, Defendant Carmelo Hernandez told Plaintiff Hernandez he had to pay $2,000 in kickbacks to Defendant CJR Framing for obtaining his H-2B visa so that he could work for the

company. Defendant Carmelo Hernandez instructed Plaintiff Hernandez that Defendant CJR Framing would deduct $200 from each weekly wage payment.

69. After Defendants took possession of Plaintiffs' passports, visas, and/or return travel tickets, Defendants refused to return the documents to Plaintiffs.

70. Defendants violated federal law and the H-2B regulations by unlawfully confiscating Plaintiffs' passports and other documents in an attempt to prevent Plaintiffs from leaving Defendants' employment.

71. Defendants made wage payments to employees in cash and not with a paycheck as required by law.

72. The new wage rate that Defendants told Plaintiffs they would be paid once they were in the United States was less than the required prevailing wage rate and less than the wage rate specified in Defendant CJR Framing's labor certification application.

73. At all times relevant to this action, Plaintiffs routinely worked more than 40 hours in a workweek, regularly worked up to 60 hours in a workweek, and sometimes worked more than 60 hours in a workweek. Defendants were required to pay Plaintiffs overtime at one and one-half times their regular rate of pay but failed to do so.

74. Defendants did not properly record the number of hours Plaintiffs worked for them as required by the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA").

75. Defendants illegally deducted approximately $200 from Plaintiff Mendez's pay with the goal of recovering a total of $2,000 in fees for his H-2B visa. Defendants also failed to reimburse travel costs Plaintiffs incurred to come to the U.S., constituting an illegal de facto deduction from wages.

76. As a result of Defendants' pay practices, illegal deductions, and failure to compensate Plaintiffs for all hours of their work, Defendants failed to pay Plaintiffs the required minimum wages in some workweeks and the required time and one-half their regular rate of pay as overtime compensation for all hours Plaintiffs worked in excess of 40 hours during each workweek.

77. Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, by any person—including, for example, wood and construction tools and equipment—and in that said enterprise has had and has an annual gross volume of sales made or business done in excess of $500,000, exclusive of excise taxes at the retail level which are separately stated.

78. Each of the individual Defendants had knowledge of the fraudulent recruitment and personally benefitted from the fraudulent actions.

79. Defendant Javier Hernandez signed the H-2B application and recruitment documents as President of Defendant CJR Framing, certifying that Defendant CJR Framing would comply with the promises contained therein when he knew that it had no intention of complying with the promises or with the H-2B requirements.

80. Defendants Fernando Hernandez and Carmelo Hernandez had knowledge of the promises made through the recruitment process and the H-2B applications and acted as direct supervisors on the job sites to enforce the company's policies in violation of those promises and the H-2B requirements.

81. At all times relevant to this action, Defendants knowingly, willfully, or with reckless disregard, carried out their illegal pattern or practice of failing to pay the required prevailing wage, failing to pay overtime compensation due to Plaintiffs, and making illegal deductions from Plaintiffs' wages that sometimes brought Plaintiffs' hourly rate below the minimum wage.

82. At all times relevant to this action, Defendants failed to maintain and preserve complete and accurate records of Plaintiffs' hours of work as required by the FLSA.

83. Defendant CJR Framing breached its contract with Plaintiffs by failing to pay the DOL prevailing wage applicable to the job Plaintiffs performed for Defendants.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(**Fair Labor Standards Act-Minimum Wage & Overtime Violations**)

84. This count sets forth a claim for declaratory relief and damages for each Defendant's violation of the minimum wage and overtime provisions of the FLSA.

85. By failing to pay Plaintiffs the minimum wage for certain workweeks, Defendants violated Plaintiffs' rights under the FLSA, 29 U.S.C. § 206(a), for which Plaintiffs are entitled to relief pursuant to 29 U.S.C. § 216(b).

86. Defendants violated the FLSA, 29 U.S.C. § 207(a), by failing to pay Plaintiffs the proper overtime wage rate.

87. Defendants' failure to pay Plaintiffs their federally mandated overtime wages was a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

88. For Defendants' violations of the FLSA, the Plaintiffs have suffered injury and are entitled to their unpaid minimum wages and unpaid overtime wages, plus an equal amount in liquidated damages, costs of court, and attorney's fees pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
(Breach of Contract)

89. Defendant CJR Framing entered into employment contracts with Plaintiffs.

90. Plaintiffs satisfactorily performed all employment duties and responsibilities required of them under the employment contracts with Defendant CJR Framing.

91. Defendant CJR Framing breached the employment contracts with Plaintiffs by failing to comply with their terms and conditions—including by failing to pay the promised wage, failing to reimburse Plaintiffs' travel expenses, and charging Plaintiffs visa fees—for which Plaintiffs are entitled to relief pursuant to the common law of contracts and Chapter 38 of the Texas Civil Practice and Remedies Code.

## THIRD CAUSE OF ACTION
(TVPRA Unlawful Conduct With Respect to Immigration Documents Under 18 U.S.C. § 1597(a)(3) and § 1595(a))

92. Defendants knowingly removed, confiscated, possessed, or concealed the actual passport and visas of Plaintiffs Gerardo Mendez Perez and Alfredo Hernandez Perez in order to, without lawful authority, maintain, prevent, or restrict the labor or services of Plaintiffs.

93. As a result of Defendants' unlawful conduct, Plaintiffs suffered injury and are entitled to recover damages and attorney's fees pursuant to 18 U.S.C. § 1595(a).

## FOURTH CAUSE OF ACTION
(Fraudulent Inducement)

94. As described above, Defendants and their agents knowingly or recklessly made material, false representations to Plaintiffs regarding the terms and conditions of Plaintiffs' employment with Defendant CJR Framing, Inc.

95. Defendants and their agents made such material, false representations with the intent that Plaintiffs would be persuaded to enter into employment contracts and come to the United States to work for Defendant CJR Framing.

96. Plaintiffs relied on Defendants' and their agents' representations by incurring debt and leaving their families and homes to travel to the United States to work for Defendants.

97. Each Defendant had knowledge of the fraud, was a beneficiary of the fraud, and personally benefitted from the fraudulent transactions.

98. As a result of Defendants' fraud, Plaintiffs suffered injury and are entitled to relief under the common law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this court:

a. Declare Defendants in violation of each of the causes of action set forth above;

b. Award damages to Plaintiffs for Defendants' failure to pay minimum wage and overtime wages under the FLSA and an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(b).

c. Award damages to Plaintiffs pursuant to Plaintiffs' Breach of Contract claim;

d. Award damages to Plaintiffs on their TVPRA claim, including punitive damages, and attorney's fees;

e. Award damages to Plaintiffs pursuant to Plaintiffs' Fraud claim;

f. Award Plaintiffs the costs of this action;

g. Award Plaintiffs a reasonable attorneys' fee;

h. Award Plaintiffs Pre-Judgment and Post-Judgment interest; and

i. Grant such other relief as this Court deems just and proper.

Respectfully submitted,

EQUAL JUSTICE CENTER

By: /s/ Reema Ali
Reema Ali
Texas State Bar No. 24105327
rali@equaljusticecenter.org
EQUAL JUSTICE CENTER
1250 W. Mockingbird Ln., Ste. 455
Dallas, Texas 75247
Tel (469) 228-4234
Fax (469) 941-0861

Christopher J. Willett
Texas State Bar No. 24061895
cwillett@equaljusticecenter.org
Rebecca Eisenbrey (preparing application for admission to N.D. Texas)
Texas State Bar No. 24097646
reisenbrey@equaljusticecenter.org
EQUAL JUSTICE CENTER
510 Congress Ave., Ste. 206
Austin, Texas 78704
Tel (512) 474-0007, ext. 107
Fax (512) 474-0007

COUNSEL FOR PLAINTIFFS